May it please the court. Neil Strensen, appearing for Petitioner Roberto Urrutia-Schmidt. I would like to start by addressing the one-year statute of limitations for the asylum applications. The respondent filed his asylum application more than one year after excuse me, the petitioner filed his asylum application more than one year after arrival in the United States after he discovered, after being taken into Homeland Security custody, after he discovered the existence of an Interpol arrest warrant that was provided to him at the beginning of his removal proceedings. The Board of Immigration Appeals and the government both agree that the discovery of this Interpol arrest warrant that originated from a Salvadoran court heightened his subjective fears that they take the position that it was not a material change, did not materially affect his asylum claim and therefore was not a reasonable excuse for the late filing of an asylum application. Our suggestion, our argument is that the discovery of the Interpol arrest warrant not only went to the intensification of his subjective fears, but it was also evidence for the first time for the petitioner that the government of El Salvador was continuing to pursue him even though he was out of the country, was no longer criticizing the corruption that led to his problems. And so that this discovery of the Interpol warrant also went to his objective fears and therefore materially affected his claim to asylum. The government relies largely on this Court's decision in Malti v. Ashcroft. It's important for the Court to note that this Court's holding in Malti was not dealing with the one-year statute of limitations for asylum applications. It was dealing with the immigration court regulation that allows, under certain circumstances, the late filings of motions to reopen removal proceedings. We think there is certainly some relevance in this Court's decision in Malti in that it does discuss changed circumstances, and we think the Court can properly look to Malti for guidance on changed circumstances that materially affect an asylum claim. But we think the government is wrong to suggest that Malti sets forward a test for the one-year statute of limitations in the asylum context. Did Malti involve a warrant that was issued? Excuse me, Your Honor? Did Malti involve a warrant that was issued like your case? It did not. Malti involved, it was a Christian, an Egyptian Christian who was seeking asylum who had been denied asylum by the immigration court. He then came forward with a late motion to reopen that was based upon affidavits that similarly situated family members. Coptic Christian family members in Egypt had been subjected to persecution after the denial of this asylum claim. So a very different set of circumstances. Well, what I'm having trouble with, I guess, is that the arrest warrant was related to the charges of fraud and the allegations that he had not sold houses that the people could not move into that were heavily imposed on them. And so it wasn't a separate action. It wasn't clear to me why the IJ's determination that that wasn't a changed circumstance, that was just an additional step in the fraud allegations or the criminal allegations, why that determination wasn't supported by substantial evidence. Can you help me understand how that's a changed circumstance? Well, it certainly is a continuation of the same theme on which his asylum application is based. But we would, we would, our position is that it materially affects his claim. It's a changed circumstance in that it materially affects his asylum claim because, as I said, this is something that comes to his attention after he has left El Salvador. Indeed, the warrant, the only warrant that is in the record is the Interpol warrant itself, which was issued, I believe, in 2006. But it references a Salvadoran court's arrest warrant that was issued in late 2004, I believe August of 2004. The petitioner left El Salvador in February 2004, came to the United States, had legal status. He fell out of status. But he's continuing with his life, albeit without legal status, when it comes to his attention that El Salvador is still seeking him based upon these, even though he had not criticized the government, had abandoned his, his crusade, if you will, of criticizing the Salvadoran government for its, for its corruption. And so in that respect, we think it is a material, it materially affected his claim. Well, it may make it stronger. But the question is, does it change things? It, we agree. It makes it, it makes it stronger. And, and this is why, you know, we're unable to find any cases that are directly on point, which is why we bring to the court's attention the unpublished decision in Wang. And, and again, that case does not have precedential value. But we think it's instructive for the court to look at that. Wang had a viable asylum claim. She had been subjected to a forced, a forced abortion. She did not file for asylum within one year of coming to the United States, even though she had a, a, a, a perfectly cognizable claim to asylum. New facts come to light in Wang's situation, where she learns that her family members had been arrested. And, and that was the, the, the, the reason for which this court allowed the late filing of the asylum application, even though ultimately, as this court did, it was based upon the old, the old set of facts. Kagan. Let me ask you a question. You're with the U.S.C. Clinic. U.S.C. Law School. Yes, Your Honor. Law School. And, and did we appoint the law school, or are you here independently? We're, we're, we provide pro bono services, but we're not here pursuant to a pro bono panel. Okay. You're here. Okay. That's correct.  But I think this, if I could go back to the, to the, to the Malte decision, where the, where the government suggests, and I'm paraphrasing the test that this court sets forth in Malte, that a Petitioner, that the critical question is whether or not circumstances have changed sufficiently, that a Petitioner who did not have a legitimate claim now has a claim. That might be a test for late motions to reopen, but we don't think that is the test for the one-year statute of limitations. We don't think that in the asylum context. We don't think the court has addressed that. We acknowledge, and obviously we, we argue this, we believe the Petitioner did have a viable claim to asylum and withholding of removal when he came to the United States, but we believe the discovery of this warrant showing that the government was still pursuing him did materially affect his claim and, and justifies the, the late filing of the asylum application. Perhaps I'll, I'll reserve my remaining time. You may. Thank you. Good morning, Your Honors, and may it please the Court. My name is Patrick Glenn, appearing on behalf of Attorney General Eric Holder. Petitioner, a native and citizen of El Salvador, applied for asylum in the United States in April 2007, two years after his lawful status in this country expired and only after being taken into custody by the Department of Homeland Security. After hearing on his claims, the immigration judge predominated Petitioner's untimely application for asylum, finding that it was not excused by changed circumstances, and otherwise denied Petitioner's applications for withholding of removal and protection under the Convention Against Torture. The Board adopted and affirmed the immigration judge's decision, specifically concurring with the timeliness determination, and otherwise held that Petitioner failed to establish a clear probability of persecution or torture if removed to El Salvador. Before this Court, the record does not compel the finding that Petitioner established changed circumstances to excuse his untimely application for asylum or that he otherwise established a clear probability of persecution or torture if removed to El Salvador. Now, Your Honors, the first issue before the Court does concern the asylum application. This application was indisputably untimely. Petitioner filed it two years after falling out of lawful status in the United States. His sole contention before this Court is that because he only became aware of a warrant in 2007 issued by the Salvadoran government in 2004, that this constitutes a changed circumstance. But the evidence of record simply does not compel the finding that his knowledge of this arrest warrant constitutes a change in circumstances materially affecting his eligibility for asylum. Petitioner fled El Salvador and applied for asylum in this country allegedly on account of threats that he received while presiding in El Salvador and which, according to him, are also the impetus behind the issuance of this arrest warrant. Accordingly, he fled El Salvador prior to the issuance of this arrest warrant, prior to becoming aware of this arrest warrant, but for reasons ultimately attributable to why this warrant was issued. To put it another way, this warrant represents simply a continuation of those same circumstances which caused Petitioner to flee El Salvador in the first instance. It's simply not a new circumstance materially affecting his eligibility for asylum. It does not create a claim where previously no claim existed. And I'd like to just make one main point in this regard, Your Honors. The reliance of the government is solely on the statutory language, not on multiple. It's on the statutory language which requires that a change in circumstance must materially affect the applicant's eligibility for asylum. And again, the knowledge of this warrant simply is not such a circumstance. It does not in any way materially affect Petitioner's claim before the immigration judge, and thus cannot constitute an excuse for the untimely filing of his application for asylum. And the difference between this case and the Wang case is? In the Wang case, Your Honors, what Wang in essence demonstrated was a qualitatively different claim of relief. She had never suffered any persecution attributable to her Christianity. She had no past acts attributable to persecution in connection with her Christianity. It was the fact that her family was arrested on account of that new claim that arguably constitutes changed circumstances. Here we don't have a qualitatively different claim. Again, the arrest warrant is simply the latest in the line of alleged persecution that Petitioner suffered while residing in El Salvador. So, Your Honors, the application was properly predominated, but that still leaves the applications for withholding of removal and protection under the Convention Against Torture, both of which were denied by the immigration judge and the board. And the record on review again before this Court does not establish that Petitioner has a clear probability of either persecution or torture if removed to El Salvador. And persecution and prosecution are two different things, I suppose. Correct, Your Honor. Correct. To address the issue of a clear probability of persecution, first, there were no acts of past persecution in this case. But to address first the issue of a clear probability of persecution, Petitioner has conceded that he did flee El Salvador while owing upwards of $200,000 to creditors, to suppliers. There's no indication on the face of the warrant that it's politically motivated. There's no indication, objective evidence in the record, that would establish that if Petitioner is arrested when removed to El Salvador, that this would constitute persecution rather than simply prosecution based on Petitioner's own assertions that he did flee while owing this money to his suppliers. So the record doesn't compel a finding, Your Honors, that this warrant would represent persecution, that if Petitioner were to be arrested on this warrant, it would constitute persecution. But nor is there any other objective evidence in the record that would establish this clear probability of persecution. As this Court noted earlier this year in Delgado v. Holder, a decision reissued in April 2009, there is no objective evidence to establish any political persecution occurring in El Salvador. He claimed his car was vandalized and he had some death threats. What do you attribute that to? Or do we just say, well, there's no evidence that came from authorities or anybody like that? Well, Your Honor, I think arguably you could say that the incidents of past persecution that he alleges were potentially attributable to a political ground, but that when you deal with the issue of a clear probability of persecution, there's no longer that same kind of political impetus behind whatever harm Petitioner alleges he would face. And on the issue of past persecution, the acts alleged by Petitioner don't really rise to the level of persecution as that time is contemplated by the Immigration and Nationality Act. As Your Honor noted, he's been threatened on a number of occasions, perhaps between two and four telephonically. He had slurs written on the side of one of his cars, and he alleges that a car attempted to run his vehicle off the road. These are certainly acts that shouldn't be condoned, but the term persecution is a severe concept. This Court's noted that on numerous occasions, and the acts that Petitioner has alleged simply don't rise to that requisite level of severity to constitute persecution. He's never been harmed, arrested, or detained while living in El Salvador, so there's no evidence that would compel a finding of persecution in this case. And, Your Honors, based on this Court's decision in Delgado and the absence of objective evidence in the record to establish a clear probability of persecution, there's simply no indication that Petitioner would suffer such persecution if removed to El Salvador at this date. Your Honors, I think the CAC claim speaks for itself in the briefs. If there are no further questions on any other aspect? There don't appear to be any. Thank you. In regard to the question of whether or not the acts that Petitioner has been subjected to constitutes past persecution, as we say in our brief, we think the – what he's been subjected to, the facts are closer to the facts in Songha, in this Court's decision in Songha, than they are into Lim. There have been individuals who have come to Petitioner's house, who have come to his house that was necessary in order to right these threats on his car. There was at least one attempt on his life. Again, after the fact, he receives a telephone call warning him that next time this would be his head, quote, unquote. But even if those facts do not constitute past persecution and do not trigger the regulatory presumption, we think it's clear that those past facts that he's been subjected to are facts that are indicative of the likelihood of future persecution. The Board in this case – the Board's decision in this case is a very short decision. It's three paragraphs long. It does not address the testimony, the credible testimony of the Petitioner. No credibility was finding – no adverse credibility was made – finding was made by the agency. The Court needs to accept the testimony. Therefore, it's true. But the expert witness testimony is also ignored by the Board of Immigration Appeals. The expert testified, credibly, a professor from UC Santa Barbara, that the government uses the judicial system as a way of attacking its political opponents. Did he testify that he fled in the first place? He testified that he fled El Salvador for a variety of reasons. And one of the immediate reasons was the financial ruin that he and his family were facing. So he had mixed reasons for fleeing El Salvador. The IJ also relied on the country report, which said that there were no politically motivated arrests. Why doesn't that constitute substantial evidence that the IJ could rely on? I believe – and I may be wrong in this, Your Honor – I believe the country report said there was no evidence of such events. And our – the evidence in the record has to also be weighed against the testimony of the petitioner as well as the testimony of the expert witness, who is someone who has been – who travels to El Salvador repeatedly, who studies the situation, including the political use of the judicial system. We think that compels a contrary finding. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Johnson v. Horrell.
judges: Siler, Schroeder, Ikuta